## The STATE *vs.* JOSEPH DEARBORN.

The proprietors of a toll-bridge have no lawful right to stop a traveller by force
from passing to the toll-house of the bridge, because he refuses to pay toll
until he arrives at the toll-house, where the rates of toll are exhibited.

EXCEPTIONS from the Court of Common Pleas, WHITMAN C. J.
presiding.

This prosecution for an assault and battery, was originally before
a Justice of the Peace, on the complaint of one *Peterson*, and
came by appeal to the Court of Common Pleas. There it was
proved, that *Dearborn*, on the evening of *Sept.* 25, attempted to
pass the *Canton Point Toll-Bridge*, and when he had arrived
within 35 or 40 rods of the toll-house, upon which was a board or
sign upon which were expressed the rates of toll, he was met by

the complainant, a brother of *Peterson*, the toll-gatherer, who had been employed that day as his assistant, just under the covered part of the bridge, about half an hour after sunset, the evening being rainy; that the toll-gatherer was about half way between them and the toll-house; that the assistant insisted upon payment of the toll, and *Dearborn* refused to pay, saying that he would pay at the toll-house, and no where else; that the assistant seized the reins of *Dearborn's* horse and held him fast; that *Dearborn* repeatedly told him, that if he did not release his hold of the horse, he would strike him or knock him down; that the horse was not released, and thereupon *Dearborn* struck him a violent blow across his head with the butt end of his whip. On this evidence, *Dearborn's* counsel contended, among other points taken, that the assault and battery was justifiable on the grounds, that the complainant not being toll-gatherer, had no right to demand toll; that toll was no where demandable, except at the toll-house; that in no case and under no circumstances had a toll-gatherer a right to seize hold of and detain by violence the person or property of an individual passing a toll-bridge, but that if payment of toll was refused, he must have his remedy at law to recover the toll, or the statute penalty, or by shutting the gate to prevent his passing; that the complainant was a violator of the peace and the first aggressor, and that the respondent had done no more than he had a right to do in self defence. WHITMAN C. J. instructed the jury, that so much violence only is justifiable as is absolutely necessary for the protection of the person defending himself; that the act of *Dearborn* in this case was not of that character; that the defence, that the defendant had a right to pass the bridge toll-free could not avail him, as he did not set it up at the time; that to render himself liable to the statute penalty for passing a bridge without paying toll, he must use force and violence; that toll-gatherers have a right to employ as many assistants to demand and receive toll as they may deem necessary; and that they have a right to stop persons refusing to pay toll on demand, either by shutting the gate, or by stopping the person, as in this case, from passing. The verdict was guilty, and the respondent filed exceptions.

*Codman & Fox*, for *Dearborn*, insisted on the grounds of defence by them taken at the trial in the Court of Common Pleas,

State *v.* Dearborn.

and cited *stat.* 1827, *c.* 357, § 1 ; *Nichols* v. *Bertram*, 3 *Pick.* 342 ; *stat.* 1821, *c.* 138, § 8 ; 1 *Com. Dig.* 436 ; *Almy* v. *Harris*, 5 *Johns. R.* 175 ; 4 *Bl. Com.* 490.

*D. Goodenow, Attorney General,* for the State, remarked, that as the assault and battery was proved, the justification must be made out on the other side, or a conviction must take place ; that the bridge was private property, which the defendant had no right to pass over, but on compliance with certain conditions ; that *Dearborn* had not performed these conditions ; and that therefore he was lawfully stopped under the direction of the toll-gatherer. The penalties given for forcibly passing the bridge are merely cumulative, and will not protect a man in the commission of an assault and battery. *Conklin* v. *Elting*, 2 *Johns. R.* 410.

The case was continued for advisement, and the opinion of the Court was afterwards prepared by

WESTON C. J. — The proprietors of toll-bridges are entitled to receive the tolls, granted to them by the legislature. A question arises, by what remedies this right may be enforced. It may, in the first place, be enforced by suit. We are inclined also to the opinion, that at the place of receiving toll, they might interpose a gate or bar, which they might refuse to open, unless their toll was paid. And if a party, without paying, will pass by force and violence, or attempt to pass, without paying the legal toll, if demanded, he is liable to a penalty, to be recovered for their use. *Stat.* of 1827, *c.* 357.

If these remedies prove insufficient, it is for the legislature to provide others. The right to seize and stop the person of the traveller, or his horse or carriage, is no where given. The law does not suffer rights to be enforced by violence. The exercise of the power claimed by the toll-keeper, would rarely fail to occasion a breach of the peace. And if such a right existed, which we do not admit, we are satisfied that it could not be exercised, until the traveller had arrived at the place where toll was receivable. The statute, from which these proprietors derived their power, recognizes such a place, where also it requires, that the rates of toll should be affixed. The presiding Judge having ruled differently, the exceptions are sustained, and a new trial granted. Although

the toll-keeper had no right to seize the defendant's horse, yet if he repelled the assailant by unwarrantable violence, he will fail in his justification.